IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KARLA MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-cv-1020-TFM |
| | ) | [wo] |
| CHARLES J. VEALE, M.D., P.C., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties pursuant to 28 U.S.C. § 636(c). *See* Docs. 45, 46.

Pending before the Court is *Defendant's Motion for Sanctions Including Dismissal of the Action With Prejudice* (Doc. 73, filed 8/30/16). Plaintiff submitted her response on September 16, 2016 (Doc. 75). The Court held a hearing and oral arguments on the matter on September 22, 2016. After the hearing, the Court permitted post-hearing briefing and replies. *See* Docs. 79, 80, 81, 82, 83, 84, and 85. An official transcript was prepared and docketed on December 2, 2016. After review of all the relevant pleadings, testimony, and evidence presented, the motion is fully submitted and ripe for review. On January 5, 2017, the Court entered an order which GRANTED in part and DENIED in part the Defendant's motion. *See* Doc. 87. This memorandum opinion now provides the basis for that ruling.

### I.   BACKGROUND

Plaintiff Karla Morrison ("Plaintiff" or "Morrison") filed her Complaint in this case on October 2, 2014 wherein she alleged violations of the Fair Labor Standards Act ("FLSA"). *See*

Doc. 1.  Defendant is Charles J. Veale, M.D., P.C. ("Defendant" or "Veale Practice").  Plaintiff states she was employed by Defendant from September 2011 through her termination on August 19, 2014.  Plaintiff asserts two counts for violations of FLSA.  Count I claims that Defendant failed to pay her the minimum wage from September 2011 until mid-February 2012 though she worked approximately thirty (30) hours per week.  Count II claims that Defendant failed to pay overtime compensation from February 2012 to August 19, 2014 (her termination date) though Plaintiff regularly worked in excess of forty (40) hours.

After several continuances of the discovery deadline and other relevant deadlines, the discovery period finally concluded on August 5, 2016.  *See* Doc. 66.  On August 30, 2016, Defendant filed its motion for sanctions for spoliation of evidence.  *See* Doc. 73.  Defendant alleges that after Plaintiff's termination, she improperly logged in to the office email account and deleted all the emails contained within the account.  Defendant further alleges that she would secretly and repeatedly log-in to the email account to delete emails throughout the course of the litigation.  Defendant states Plaintiff added 2-step verification to the log in process in April 2015 (long after she was terminated).  The verification process was linked to her cell phone.

Plaintiff denies the allegations.  Plaintiff states that the only time she accessed the account post-termination was either August 19 or 20, 2014 solely to close out items (including her personal email).  Plaintiff claims all emails related to the practice had already been copied and placed in their proper files at the Veale Practice.  Plaintiff states that she was only closing out matters already completed.  Plaintiff acknowledged she added an inactive account manager notification and an auto-reply which automatically sent a responsive email to the sender that they should contact the Veale Practice directly at the appropriate telephone number.  Plaintiff denies accessing the account any time afterwards.  Plaintiff claims the deleted emails had no bearing on

the case and were clearly not important to the Veale Practice as they did not make any efforts to retrieve them during 2015. Plaintiff claims she did not activate the 2-step verification process in April 2015 and posits anyone could have done that and specifically identifies the Defendant as likely having added Plaintiff's cell phone.

On September 22, 2016, the Court heard oral arguments and evidence as it related to the motion. The Court heard testimony from Plaintiff's prior three attorneys (which included a limited waiver of privilege as it pertained to discovery matters), Plaintiff Karla Morrison, Nancy Veale, Kathryn Peters, and Dana Johnson. The final three witnesses were employees of the Veale Practice.

Defendant in its motion for sanctions first requests dismissal with prejudice of the lawsuit. Alternatively, it requested dismissal of the FLSA overtime claim. Plaintiff opposes any sanctions, but states, in the alternative, that if granted that appropriate remedy would be a permissive jury instruction. At the conclusion of the hearing the Court provided both parties the opportunity for supplemental briefing including the Court's request to address alternative remedies besides the far ends of the spectrum each side requested. After receiving the briefs, their sur-replies, and the official transcript of the proceeding, the issue was fully ripe for disposition.

## II.     JURISDICTION AND LEGAL AUTHORITY

Morrison asserts claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as she brings claims for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. No party contests either subject matter or personal jurisdiction and adequate support exists for both.

"'Spoliation' is the 'intentional destruction, mutilation, alteration, or concealment of

evidence.'"  *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1279 (M.D. Fla. 2009) (citations omitted); *see also Evans v. Mobile County Health Dep't*, Civ. Act. No. 10-0600-WS-C, 2012 U.S. Dist. LEXIS 8530, 2012 WL 206141 (S.D. Ala. Jan. 24, 2012) (Cassidy, M.J.) (quoting *Swofford*); *cf. Green Leaf Nursery c. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (spoliation defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument, without reference to intentionality); *Oil Equip. Co. v. Modern Welding Co.*, --- Fed. Appx. ---, 2106 U.S. App. LEXIS 17632, *15, 2016 WL 5417736, *5 (11th Cir. Sept. 29, 2016) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Spoliation" refers to "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Eleventh Circuit again includes both intentional and negligent mens rea.).  A district court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases."  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).  Sanctions for spoliation of evidence are intended "to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id*.

Federal law governs the imposition of spoliation sanctions since "spoliation sanctions constitute an evidentiary matter." *Id.* (citations omitted).  However, while federal law governs, a court may look to state law for guidance to the extent is consistent with federal law.  *Flury*, 427 F.3d at 944 (examining spoliation factors enumerated in Georgia law since the Eleventh Circuit had not set forth specific guidelines and Georgia law on the subject was wholly consistent with federal spoliation principles); *Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293, 1299 (M.D. Fla. 2009) ("[C]ourts may look to state law principles for guidance so long as

the principles are consistent with [general] federal spoliation principles [that do exist].").

The Alabama Supreme Court has applied the following five factors in analyzing a request for spoliation sanctions: "(1) the importance of the evidence destroyed; (2) the culpability of the offending party; (3) fundamental fairness; (4) alternative sources of the information obtainable from the evidence destroyed; and (5) the possible effectiveness of other sanctions less severe than dismissal." *Story v. RAJ Properties, Inc.*, 909 So.2d 797, 802–803 (Ala. 2005) (citation omitted); *see also Oil Equip Co.*, 2016 U.S. App. LEXIS 17632 at *15-16, 2016 WL 5417736 at *5 (quoting *Story*); *Ray v. Ford Motor Co.*, 792 F.Supp.2d 1274, 1279 (M.D. Ala. 2011) (citing *Story*).

Finally, Federal Rule of Civil Procedure 37(e) addresses Electronically Stored Information (ESI). The relatively new Fed. R. Civ. P. 37(e) went into effect on December 1, 2015 which is after the filing of this case. As such, it is not binding, but the Court finds the material persuasive. It states as follows:

> (e) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). The notes pertaining to 2015 amendments are also persuasive. The notes

pertaining to (e)(2) are as follows:

> Subdivision (e)(2). This subdivision authorizes courts to use specified and very severe measures to address or deter failures to preserve electronically stored information, but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation. It is designed to provide a uniform standard in federal court for use of these serious measures when addressing failure to preserve electronically stored information. It rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence.
>
> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.
>
> Similar reasons apply to limiting the court's authority to presume or infer that the lost information was unfavorable to the party who lost it when ruling on a pretrial motion or presiding at a bench trial. Subdivision (e)(2) limits the ability of courts to draw adverse inferences based on the loss of information in these circumstances, permitting them only when a court finds that the information was lost with the intent to prevent its use in litigation.
>
> Subdivision (e)(2) applies to jury instructions that permit or require the jury to presume or infer that lost information was unfavorable to the party that lost it. Thus, it covers any instruction that directs or permits the jury to infer from the loss of information that it was in fact unfavorable to the party that lost it. The subdivision does not apply to jury instructions that do not involve such an inference. For example, subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. These measures, which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice. In addition, subdivision (e)(2) does not limit the discretion of courts to give traditional missing evidence instructions based on a party's failure to present evidence it has in its possession at the time of trial.

> Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation. This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial. If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.
>
> Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice.
>
> Courts should exercise caution, however, in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee.

Ultimately, when evaluating spoliation issues, the Court must first determination if spoliation actually occurred. The Court then determines whether there is a finding of bad faith. Next, the Court must determine whether a sanction is appropriate and finally, what sanction to impose.

In describing the standard governing bad faith, the Eleventh Circuit explained that the law does not require a showing of malice, but that instead, in determining whether there is bad faith, a court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party. *Ray*, 792 F.Supp.2d at 1279 (citing *Flury*, 427 F.3d at 944). Further, while the

burden falls on the party seeking sanctions, it is also just as true that the non-spoliating party may never be able to fully prove what was contained in the destroyed evidence. In that situation, only the party engaged in the destruction will typically know how much prejudice has been caused by her destructive act. *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1379 (S.D. Ga. 2008) ("To require a party to show, before obtaining sanctions, that unproduced evidence contains damaging information would simply turn 'spoliation law' on its head."); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 133 (S.D. Fla. 1987) ("While it is now impossible to determine precisely what or how many documents were destroyed, the bad faith destruction of a relevant document, by itself, 'gives rise to a strong inference that production of that document would have been unfavorable to the party responsible for its destruction.'" (quoting *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)); *Evans*, 2012 U.S. Dist. LEXIS 8530 at 46, 2012 WL 206141, at *12 (explaining that the "plaintiff's willful disregard of her obligation to preserve evidence has inhibited the production of evidence that may have been harmful to her case such that whether the spoliated evidence would, in fact, have been detrimental is irrelevant since no one, other than perhaps Evans herself, can know for certain"); s*ee also Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Southeast, Inc.*, Civ. Act. No. 2:09-cv-193-MHT, 2012 U.S. Dist. LEXIS 625, *4-5, 2012 WL 1571314, *1 (M.D. Ala. May 4, 2012) (Thompson, J.) (citing above cases)

"Sanctions the Court may impose against a [party] for spoliation include, but are not limited to, the following: default judgment[/dismissal], adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation." *Swofford*, 671 F.Supp.2d at 1280 (citing *Flury*, 427 F.3d at 945); *see also Evans*, 2012 U.S. Dist. LEXIS 8530 at *43, 2012 WL 206141, at *11 (quoting same from *Swofford*). In *Flury*, the Eleventh Circuit explained that dismissal is the

most severe sanction available, and should only be used where there is a showing of bad faith and where lesser sanctions will not suffice. *Flury*, 427 F.3d at 944. With regard to adverse inferences, there are different kinds and levels of inferences the Court can impose, ranging in escalating levels of harshness against the spoliating party. *In re Boston Board, III, L.L.C.*, 310 F.R.D. 510, 514-15 (S.D. Fla. Sep 2, 2015) (citing *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010), abrogated on other grounds by *Chin v. Port Auth. Of New York and New Jersey*, 685 F.3d 135 (2d Cir. 2012)). On the lowest end of the spectrum, the Court can instruct the jury that it may presume the lost evidence is relevant and favorable to the innocent (non-spoliating) party while also considering the spoliating party's rebuttal. In short, it is a permissible, but not required presumption. The jury itself may then decide whether to even draw an adverse inference. *Id*. In the middle, the Court imposes a mandatory presumption, albeit still rebuttable. *Id*. Finally, the harshest adverse inference instruction results in the court instructing the jury that certain facts are deemed admitted and must be accepted as true. *Id*.

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Optowave Co. v. Nikitin*, Civ. Act. No. 6:05-cv-1083-Orl-22DAB (M.D. Fla. Nov. 7, 2006) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)).

### III. DISCUSSION AND ANALYSIS

Here, the Court finds that Plaintiff deliberately logged into the gmail account at issue to delete emails. Plaintiff acknowledges that mere days after her termination that she logged in to the gmail account to "close out items." *See* Doc. 75 at p. 1 and Ex. 11, ¶ 2. By close out, Plaintiff said that she deleted the emails contained in the account, but indicated that the relevant

ones had been printed out and placed in their appropriate Practice files and the rest were junk. *Id*. at Ex. 11, ¶ 4. That action alone *could* have constituted spoliation, but likely would not have resulted in the situation currently before the Court. Plaintiff denies ever accessing the gmail account after that August 2014 date. The continued access and deletion is the main issue before the Court when considering this spoliation and sanctions request.

As discussed previously when evaluating spoliation issues, the Court must make the following determinations: (1) if spoliation actually occurred, (2) whether there was bad faith in the spoliation, and (3) whether a sanction is appropriate and if so, what sanction to impose. The Court will address each in turn.

**A.   Whether Spoliation Occurred**

In using the definition of spoliation, at this stage of the analysis the Court will not consider Plaintiff's intent. As such, the Court uses the definition from the recent – albeit unpublished – Eleventh Circuit case where it states "Spoliation" refers to "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See Oil Equip. Co.*, --- Fed. Appx. ---, 2106 U.S. App. LEXIS 17632 at *15, 2016 WL 5417736 at *5 (citations omitted). Plaintiff admits she accessed the account after her termination – though she denies the continued accessing or adding the 2-step authentication in April 2015. Plaintiff acknowledges she deleted emails up to August 19-20, 2014. Those emails pertained to her work at the Veale Practice. As such, the destruction of the original emails clearly occurred. Whether those emails were physically duplicated in the files is a different question – there can be no question that emails were deleted from the account after the termination date.

Next the Court must look to whether Plaintiff continued to access the account after the

one time to which she admits.  Defendant alleges she continued to access the account and delete emails and also added her cell phone number to the account to enable the 2-step verification for log in to the gmail account.  The Court will first provide a brief summary of 2-step verification as it applies to gmail accounts.

Free Gmail accounts are provided and serviced by Google.  Google, like many similar providers, has been concerned with improving the security of its email accounts.  As such, it added the ability to utilize a 2-step verification process when accessing a Google email account.  As described by Google, "2-Step Verification can help keep bad guys out, even if they have your password."[1]  To activate the 2-step verification process, the person first logs into the gmail account then clicks on My Account followed by sign-in and security.  At that point, the option for "2-Step Verification" is available to select.  Once selected, the person will re-enter the password and then will click "turn on."[2]  Therefore, during the 2-step verification activation process, the person will enter the cell phone to receive verification codes.  The person may select text message or voice call for confirming the phone number entered.  Once the test verification code is sent to the phone number (either by phone call or text), the person inputs the code, and completes the 2-step verification enrollment.[3]

Based on the above, it is clear that on April 22, 2015, the gmail account at issue was accessed on April 23, 2015 and the 2-step verification process was turned on.  *See* Doc. 76, Exhibit C.  The screen capture of the account confirms the 2-step verification process was

---

[1] Information regarding the Google (Gmail) 2-step verification is available here: https://www.google.com/landing/2step/index.html#tab=why-you-need-it (last visited January 23, 2017).

[2] In the case at hand, the only type of 2-step verification at issue is the one involving cell phones and text messages.  There are other methods for 2-step verification, but none have been utilized in this case.

[3] Screen captures of the step-by-step process to enable 2-step verification can be found here: http://www.dominican.edu/academics/resources/technology/application-web-services/google/security/google-2-step-verification-setup-with-screenshots (last visited January 23, 2017).

activated as of "23 April 2015." *Id*. The phone number listed on the account was confirmed as Plaintiff's cell phone at her deposition and she never disputes the number in any of her various pleadings. *See* Morrison Deposition, p. 123-125.

Plaintiff in her affidavit, deposition, and in-court testimony denies having accessed the account on or about April 23, 2015. She alleges someone else (namely defendant) could have added her number. However, as discussed in the 2-step verification process, that would be almost impossible. Essentially, whomever activated the 2-step verification process with Plaintiff's cell phone number would have also needed the cell phone in hand to receive the verification code to input to complete the 2-step verification activation process. By pointing the finger at Defendant (or anyone else), Plaintiff ignores the fact Defendant would have also needed access to her cell phone at that exact time. Given that the 2-step verification occurred around eight months after Plaintiff's termination, this simply defies reality. Additionally, given that the gmail email account contained no emails pre-dating April 23, 2015, it also proves unlikely that zero emails came in between August 21, 2014 and April 23, 2015. Common sense and rudimentary knowledge of the ways of email indicates at least some spam or other emails would have come in. The common-sense conclusion of the Court is verified by Plaintiff's own testimony that the email account would receive approximately 10-15 emails throughout the day from various vendors. *See* Doc. 86, Official Transcript of Hearing at p. 125. To believe the Plaintiff would require the Court to conclude the gmail account suddenly and inexplicably stopped receiving emails around August 21, 2014 which just as inexplicably started up again after April 23, 2015 (conveniently dovetailing with the date the 2-step verification process was enabled).

Rather, the Court finds that based on the facts, the only plausible explanation is that

Plaintiff, and no one else, accessed the email account to add her cell phone to the 2-step verification process to deny Veale or anyone else access to the account. Further, the Court also finds that Plaintiff deleted emails on at least two occasions – the first (by her own admission) in August 2014 and the second in April 2015. Therefore, the answer to the Court's first inquiry – whether spoliation occurred – is clearly yes.

**B.     Bad Faith**

The Court must next look to whether the emails were deleted in bad faith. To do so, the Court will continue its discussion from the previous section. Based on the evidence presented in the motion, response, briefs, replies, hearing, the Court simply does not find Plaintiff's testimony credible. In particular, the Court relies upon its observations of Plaintiff's testimony and the description of the email 2-step verification process. The Court finds no one else could have or did add Plaintiff's cell phone to the process. As already noted by the Court, despite Plaintiff finger pointing that the Defendant could have added the number to the 2-step verification, the Veale Practice simply did not have the capability of adding her cell phone number without also possessing Plaintiff's cell phone. Moreover, the Veale Practice could not benefit in some nefarious way by adding Plaintiff's cell phone to the 2-step verification process because if it did so, it also follows that it could never receive the verification code to access the account. Lastly, the Court does not find it credible that Plaintiff was unaware of her obligation to maintain the information in the account especially as she was represented by several competent and respected counsel.

The only remotely difficult matter the Court faces is determining the importance of the emails. Plaintiff, in her response and oral arguments at the hearing, indicate the information could not have been that important as Defendant delayed in seeking it. Further, Plaintiff states

the relevant emails were printed and placed in files prior to her deletion.  Unfortunately for Plaintiff, her position requires the Court to believe her – which it does not.  Given that the Court already found her testimony incredible on the accessing of the email account, the Court also has to take her remaining testimony with the salt it is due.  As previously noted, the innocent party may never be able to establish what was in the deleted emails.  While the Court is somewhat concerned about the defense's delay, in reviewing the totality of the circumstances, the Court looks to Plaintiff's continued misdirection and deception about the email account and finds that explains Defendant's lack of movement on the email account.

In line with other federal court's findings, this Court cannot conclude that Defendant must prove the contents of the deleted emails – only Plaintiff could have done that.  Plus, the deletion and behavior surrounding it leads this Court to conclude the evidence was likely unfavorable to her case (and conversely favorable to the Defendant) and Plaintiff thus destroyed the evidence in bad faith.  In sum, it is not only the action, but the cover up that leads the Court to this conclusion.  Defendant is now deprived of that evidence which could have been used in the defense of Plaintiff's claims.

**C.    Sanction**

Having found the evidence was destroyed in bad faith, the Court must look to whether a sanction is appropriate and if so, what sanction would suffice.  Defendant seeks the ultimate sanction of dismissal with prejudice or at least dismissal of the FLSA Overtime claim (Count II).  The Court strongly considered dismissal in light of Plaintiff's egregious conduct.  The Court even finds that while this case *may* rise to the level that dismissal *could* be an appropriate sanction, it declines to do so because a lesser sanction would suffice to address the destruction.  The Court finds that dismissal is not necessary as there is still a remedy which will prevent

Plaintiff from benefiting from the spoliation while also ensuring Defendant can adequately defend its claim.

Plaintiff, on the other hand, alternatively requests an inference instruction – though obviously the lowest form of inference (permissive with rebuttal).  However, the proposed instruction by Plaintiff does not constitute a negative inference in any form.  Rather the proposed instruction flies in the face of spoliation when it states:

> After her termination on August 19, 2014, the Plaintiff deleted hundreds of emails regarding work done by her at Dr. Veale's medical practice from 7:30 a.m. to 5:00 p.m. on February 2012 through August 19, 2014 and notified the Practice of her actions in this regard on August 21, 2014.  These emails were not deleted in bad faith or with malice, and are not relevant to Plaintiff's overtime claims in this case because this work was only done during the day at the Practice, while the overtime work was only done after 5:00 p.m. and on weekends in her home.

*See* Doc. 81.  Plaintiff's instruction actually puts Defendant in a worse position than if no instruction were given.  It not only ignores the importance of deleting emails, but also implies Plaintiff worked overtime.  Clearly this would be no sanction, but instead constitutes a gift for the Plaintiff despite her misconduct.  Given that the Court has found bad faith in the destruction of emails, the Court finds a much harsher adverse inference is necessary.  As noted above, the harshest adverse inference instruction results in the court instructing the fact-finder that certain facts are deemed admitted and must be accepted as true. The Court finds this instruction is far more appropriate for the egregiousness of Plaintiff's misdeeds.

As such, the Court adopts the alternative sanction proposed by the Defendant in its post-hearing brief.  *See* Doc. 80 at p. 6-8.  The fact-finder must accept as true the time cards / timesheets created by Plaintiff while she worked for the Veale Practice.  Plaintiff is precluded from submitting evidence in dispute of the time cards that she herself created to reflect her hours while working at the Veale Practice.  All Veale Practice employees sent their respective time

cards and time sheets to Plaintiff (as the Office Manager) who then signed off on them and sent them to the Practice's accountant for pay calculation.  Plaintiff created her own time records to reflect her hours paid.  Further, as the Office Manager, Plaintiff bore the responsibility for reviewing all employee's time cards (including her own) for accuracy to ensure employees were paid for all the hours they worked.  *See* Doc. 80, p. 6-7 (containing citations to evidence).  This mandatory evidentiary presumption that the time cards are accurate prevents Plaintiff from benefiting from the email destruction.

Based on the above, the Court finds that a sanction is necessary and the appropriate sanction is an instruction to the fact-finder that Plaintiff's time as she reported on her time cards is deemed admitted and must be accepted as true.  This will be applicable at all remaining phases of this litigation to dispositive motions and trial.

### IV.   CONCLUSION

At the end of the day, a decision regarding spoliation and whether to award sanctions is both objective and subjective.  These inquiries are fact intensive and must be reviewed on a case by case basis.  Often times the Court, when reviewing the evidence, must make a determination which is based on a "gut reaction" based upon years of experience as to whether a litigant has complied with discovery obligations and the litigant's intent when spoliation occurs.  Sanctions motions like this one are time consuming, distracting, and expensive.  For these reasons, courts must use careful consideration when rendering a decision which concludes a party violated its duty to comply with discovery obligations and deserves to be sanctioned.  In this case, the Court does not make this decision lightly.  Additionally, the Court wishes to be clear for the record.  This finding is specifically directed against Plaintiff and not any of her counsel (current or previous).

Based on the analysis contained in this Memorandum Opinion, on January 5, 2017, the Court ORDERED that the motion for sanctions (Doc. 73) to be GRANTED in part and DENIED in part.  *See* Doc. 87.   To the extent the motion sought dismissal (in whole or in part) of Plaintiff's claims, the motion was DENIED.  To the extent the motion sought a sanction for the destruction of the emails at issue, the Court found that a sanction was appropriate and GRANTED the motion.

At the hearing, Defendant also requested attorney's fees as they related to the motion for the sanctions.  Defendant may file a properly supported motion for attorney's fees on or before **February 10, 2017**.

DONE this 25th day of January, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE