IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KARLA MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-cv-1020-TFM |
| | ) | [wo] |
| CHARLES J. VEALE, M.D., P.C., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. 68, filed August 15, 2016). This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties pursuant to 28 U.S.C. § 636(c). *See* Docs. 45, 46. After a careful review of all the written pleadings, motions, responses, and replies, the Court GRANTS in part and DENIES in part the motion for summary judgment (Doc. 68).

### I.   JURISDICTION

Morrison asserts claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as she brings claims for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. No party contests either subject matter or personal jurisdiction and adequate support exists for both.

### II.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Karla Morrison ("Plaintiff" or "Morrison") filed her Complaint in this case on October 2, 2014 wherein she alleged violations of the Fair Labor Standards Act ("FLSA"). *See* Doc. 1. Defendant is Charles J. Veale, M.D., P.C. ("Defendant" or "Veale Practice"). Plaintiff

argues she was employed by Defendant from September 2011 through her termination on August 19, 2014.  Plaintiff asserts two counts for violations of FLSA.  Count I alleges that Defendant failed to pay her the minimum wage from September 2011 until mid-February 2012 though she worked approximately thirty (30) hours per week.  Count II alleges that Defendant failed to pay overtime compensation from February 2012 to August 19, 2014 (her termination date) though Plaintiff regularly worked in excess of forty (40) hours.

After several continuances of the discovery deadline and other relevant deadlines, the discovery period finally concluded on August 5, 2016.  *See* Doc. 66.  On August 30, 2016, Defendant filed its motion for sanctions for spoliation of evidence.  *See* Doc. 73.  Specifically, Defendant alleges that after Plaintiff's termination, she improperly logged in to the office email account and deleted all the emails contained within the account, would secretly and repeatedly log-in to the email account to delete emails throughout the course of the litigation, and added 2-step verification to the log in process to prevent others from accessing the email account.  Plaintiff denied the allegations.  Due to the nature of the spoliation allegations, the Court suspended briefing on the motion for summary judgment to resolve the issues of spoliation and sanction.  *See* Doc. 74.  After holding a hearing and considering all briefs on the matter, the Court determined that deliberate spoliation occurred and that the emails were deleted in bad faith.  *See* Docs. 87, 92.  Consequently, the Court granted the request for sanction and imposed an unrebuttable adverse inference instruction – deeming the hours presented in the time cards as admitted and accepted as true.  *See* Doc. 92 at p. 15.  Specifically, the Court stated

> The fact-finder must accept as true the time cards / timesheets created by Plaintiff while she worked for the Veale Practice.  Plaintiff is precluded from submitting evidence in dispute of the time cards that she herself created to reflect her hours while working at the Veale Practice.  All Veale Practice employees sent their respective time cards and time sheets to Plaintiff (as the Office Manager) who then signed off on them and sent them to the Practice's accountant for pay

> calculation. Plaintiff created her own time records to reflect her hours paid. Further, as the Office Manager, Plaintiff bore the responsibility for reviewing all employee's time cards (including her own) for accuracy to ensure employees were paid for all the hours they worked. *See* Doc. 80, p. 6-7 (containing citations to evidence). This mandatory evidentiary presumption that the time cards are accurate prevents Plaintiff from benefiting from the email destruction.

*Id.* at p. 15-16.

After making its determination, the Court issued a new briefing schedule for the motion for summary judgment and set the remaining deadlines in the case. *See* Docs. 88-89. Plaintiff timely filed her opposition to the motion for summary judgment. *See* Doc. 95. Defendant timely filed its reply. *See* Doc. 96.

Count I of the Complaint alleges Plaintiff worked from September 2011 to mid-February 2012 and was not paid for the work she performed for the benefit of the Defendant. *See* Doc. 1 at p. 3; *see also* Doc. 95 at p. 2 (Response in opposition to summary judgment). Defendant asserts in its motion for summary judgment that this claim is barred by the FLSA's two-year statute of limitations. *See* Doc. 68 at p. 7-9. Specifically, Defendant states that Plaintiff has not shown the claim arises out of a willful violation which is the only time the statute of limitations extends to three years. *Id*. Further, Defendant argues Plaintiff volunteered for the first several months and FLSA is not even applicable to the claim. *Id*. Plaintiff opposes summary judgment on Count I and states FLSA does not allow an employee to work for free or volunteer services without pay. *See* Doc. 95 at p. 6. Plaintiff further argues that the three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA, but simply disregarded the possibility that it might be violating the FLSA. *Id*.

Count II of the Complaint alleges Plaintiff regularly worked in excess of forty hours in a work week, but was rarely paid for her overtime hours. *See* Doc. 1 at p. 4-5. Specifically, Plaintiff claims she consistently worked between 25-30 hours of overtime each week from mid-

February 2012 through August 2014 and was not paid 1 ½ times her regular hourly rate for those hours.  *Id*.  Defendant asserts in its summary judgment motion that the Veale Practice maintained time sheets to demonstrate the hours worked by its employees.  *See* Doc. 68 at p. 5.  Plaintiff – as the office manager – was responsible for ensuring the accuracy of the time sheets, certifying the hours, and submitting the time sheets to the accountant for pay computation.  *Id*.  Defendant asserts that because they had no knowledge of the overtime hours and Plaintiff herself was the one responsible for the allegedly false time cards, it cannot be held responsible for actions Plaintiff independently chose to take without its knowledge.  *Id*. at p. 10-11.  Additionally, Defendant argues the job could be done within the normal 40-hour workweek as before and after Plaintiff's tenure as Office Manager, the position was only part-time.  *Id*. at p. 11.  Finally, and in the alternative, Defendant argues that from January 13, 2014, Plaintiff was an exempt, salaried, administrative employee and therefore not entitled to overtime.  *Id*. at p. 12-13.  Plaintiff, in her opposition to defendant's motion for summary judgment, acknowledges that as a result of the Court's sanction imposing the mandatory evidentiary presumption that the time cards are accurate, there are "[no] remaining issues to be addressed at this time regarding the Plaintiff's overtime claim."  *See* Doc. 95 at p. 1-2.  Plaintiff does add in a footnote that if the Court disagrees with the assessment then supplemental briefing could be filed.

   Finally, Defendant also asserts it is entitled to summary judgment on Plaintiff's prayer for liquidated damages and attorney's fees.  The basis for this is tied to the previous assertion that Plaintiff cannot establish any violation would be willful.

   The Court has carefully reviewed the pleadings, motions, responses, and reply on this matter.  The motion and the issues presented are fully briefed and ripe for review.

### III.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*,

684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). The court must view facts and draw all reasonable inference in favor of the nonmoving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the nonmoving party "must do more than simply that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."

IV.     DISCUSSION AND ANALYSIS

Plaintiff seeks to hold Defendant liable for violation of the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206(a), 207(a) ("FLSA").  The federal minimum wage at the time at issue was $7.25 per hour.  29 U.S.C. § 206(a).  Also, an employer must pay one and one-half times the employee's regular rate for all hours worked in excess of forty hours per work week. 29 U.S.C. § 207(a). Plaintiff bears the burden of proving by a preponderance of the evidence: 1) the existence of an employment relationship; 2) that she was an employee engaged in commerce or employed by an "enterprise" engaged in commerce; 3) that Defendants failed to pay her the minimum wage and overtime required by the FLSA; 4) the Plaintiff was not exempt from FLSA; 5) the Defendant knew or showed reckless disregard for whether FLSA prohibited its conduct; and 6) Plaintiff is owed damages.  *See* 29 U.S.C. §§ 206(a), 207(a); *see also* Eleventh Circuit Pattern Jury Instruction (Civil) (2013), Instruction 4.14 at p. 240-248 (identifying jury verdict form questions).

A.     **Count I – Minimum Wage**

      i.     **Volunteer**

The central issue before the Court is whether Plaintiff was an employee of Defendant. Defendant argues that Plaintiff volunteered her services to the office from September 2011 though mid-February 2012.  The requirements of the FLSA apply only to employees.  The statute defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  In turn, the FLSA defines "to employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The FLSA does not specifically define "work." Whether a person constitutes an employee is a question of law, but it is heavily dependent upon factual

determinations.

Though Congress amended the FLSA in 1985 and incorporated a definition of "volunteer" in certain contexts, that definition does not aid in the facts of this case. Specifically, 29 U.S.C. § 203(e) provides as follows:

> (4) (A) The term "employee" does not include any individual who **volunteers** to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if—
>
> (i)  the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual **volunteered**; and
>
> (ii)  such services are not the same type of services which the individual is employed to perform for such public agency.
>
> (B)  An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency may **volunteer** to perform services for any other State, political subdivision, or interstate governmental agency, including a State, political subdivision or agency with which the employing State, political subdivision, or agency has a mutual aid agreement.
>
> (5)  The term "employee" does not include individuals who **volunteer** their services solely for humanitarian purposes to private non-profit food banks and who receive from the food banks groceries.

29 U.S.C. § 203(e)(4)-(5) (emphasis added). However, these definitions only discuss volunteers for public agencies and nonprofit food banks. Further, the definition of volunteer codified in 29 C.F.R. § 553.101 also applies only to the application of the FLSA to state and local governments. Thus, these definitions have no bearing on a "volunteer" for a private company. However, "an individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the Act." *See Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 295, 105 S. Ct. 1953, 1958, 85 L. Ed. 2d 278 (1985) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S. Ct. 639, 91 L. Ed. 809, (1947)). As aptly noted

by the Eleventh Circuit, "[t]he tricky part arises in determining who falls within the FLSA's definition. As other courts have observed, the FLSA's definitions as they relate to who qualifies as an employee are not precise." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015).

The United States Supreme Court previously held that in determining whether an employment relationship exists pursuant to the FLSA, courts must look at the "economic reality" of the relationship between the alleged employer and employee. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936, 6 L.Ed.2d 100 (1961); *see also Kaplan v. Blue Billing & Coding, Inc.*, 504 Fed. Appx. 831, 834 (11th Cir. Jan. 22, 2013) (citation omitted) ("In determining whether an employer-employee relationship exists under the FLSA, we must consider the 'economic realities' of the relationship, including whether a person's work confers an economic benefit on the entity for whom they are working."). When a person works for his own advantage or personal purpose – particularly when his work provides no "immediate advantage" for his alleged "employer" – he is not an "employee" under the FLSA. *Kaplan*, 504 Fed. Appx. at 834 (citing and quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 67 S. Ct. 639, 641-42, 91 L. Ed. 809 (1947)) (explaining that the FLSA's broad definition of "employee" "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.").

What the parties themselves label the relationship is not determinative. *See generally Alamo*, 471 U.S. at 302, 105 S. Ct. at 1962; *Goldberg*, 366 U.S. at 33, 81 S. Ct. at 936. "It is dependence that indicates employee status." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013) (internal citation omitted). Courts have considered several factors in determining economic dependence, such as "(1) the nature and degree of the alleged employer's

control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Id.* (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)). "No one factor is determinative, and each factor should be given weight according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." *Perdomo v. Ask 4 Realty & Mgmt., Inc.*, 298 Fed. Appx. 820, 821 (11th Cir. 2008) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 928-33 (11th Cir. 1996)). Put another way, "[w]hile these factors serve as guides, the overarching focus of the inquiry is economic dependence: No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor – economic dependence. The . . . tests are aids – tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit." *Scantland*, 721 F.3d at 1312 (quoting *Usery*, 527 F.2d at 1311-12).

It bears repeating that these cases all indicate the six factors are not exclusive and no single factor is dominant. Moreover, some sister courts have even determined the six-factor test is inapplicable to volunteers at *for-profit* companies, but rather is a test designed for

distinguishing employees from independent contractors. *See Rodriguez v. Township of Holiday Lakes*, 866 F.Supp. 1012, 1020 (S.D. Tex. 1994) ("This test, however, is designed to distinguish an employee from an independent contractor, a distinction that presupposes a real economic exchange between the parties which can be gauged. In the volunteer area, however, there is no economic relation to measure. As [Plaintiff's] situation shows, no money exchanges hands, and thus the very purpose of the economic reality test – to measure and balance the competing economic realities involved in an employee/independent contractor distinction--completely fails."); *Okoro v. Pyramid*, Civ. Act. No. 11-C-267, 2012 U.S. Dist. LEXIS 56277, *22-23, 2012 WL 1410025, *9 (E.D. Wis. Apr. 23, 2012) (citation and internal quotations omitted) ("The court is to review the objective facts surrounding the services performed to determine whether the totality of the circumstances' establish volunteer status . . . or whether, instead, the facts and circumstances, objectively viewed, are rationally indicative of employee status."). In fact, through the court's research, the majority of the cases applying the six-factor test relate to independent contractors or interns/externs. Additionally, the Supreme Court stated "we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys, Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445, 67 L. Ed. 2d 641 (1981) (internal citation and quotation marks omitted); *see also Alamo*, 471 U.S. at 302, 105 S. Ct. at 1962 (citing *Barrentine*).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)). "[The Court] must, as

always, liberally construe the FLSA's terms to ensure that coverage extends 'to the furthest reaches consistent with congressional direction,' while narrowly construing coverage exemptions." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, n. 36 (11th Cir. 2011) (quoting *Alamo*, 471 U.S. at 296, 105 S. Ct. at 1959); *see also Rodriguez v. Township of Holiday Lakes*, 866 F. Supp. 1012, 1019 (S.D. Tex. 1994) (citing *Nichols v. Hurley*, 921 F.2d 1101, 1103 (10th Cir. 1990)) ("exemptions from the FLSA are to be narrowly construed in favor of the employees.").

### (a) Degree of Control

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Scantland*, 721 F.3d at 1313 (quoting *Usery*, 527 F.2d at 1312-13). While Defendant argues it had no control over Plaintiff because she "volunteered" for the Practice and could simply walk out, Defendant misapplies the "control" element of the test by such a narrow construction. Even in an "at will" employment situation, an employee may simply walk out if they choose to do so. The consequences may be termination of employee, but the employee still retains some ability to choose whether or not to remain an employee. Rather, control is far broader in its application.

Taken in the light most favorable to Plaintiff, the evidence indicates that the Veale Practice had some measure of control over Plaintiff. Defendant set a schedule for her to come in (to include when another employee had classes), what duties to perform while at the office, and provided supervision over Plaintiff. In short, the day-to-day activities of Plaintiff while at the Veale Practice indicated the then-Office Manager controlled the work habits, days and hours worked, and work methods. Though Defendant is correct in that Plaintiff *chose* to come in rather than simply skipping or leaving, on the whole, the scale tips towards the Plaintiff on this element

of the test.

### (b) Opportunity for profit or loss

The second factor considers the Plaintiff's opportunity for profit or loss depending upon her managerial skill. Considering the facts most favorable to the Plaintiff, this element still favors Defendant. Specifically, at the time, Plaintiff performed activities that played no role in her ability to make or lose money. She had no managerial responsibilities and therefore her skill as a manager would have been irrelevant.[1]

### (c) Investment in Equipment or Additional Personnel Required

The third factor considers the Plaintiff's investment in equipment or materials required for the tasks or her employment of workers. For the time frame at issue, Plaintiff served primarily in administrative roles – such as running the front desk, acting as a receptionist, straightening up the lobby. Plaintiff presents no evidence that she was required to purchase any equipment or materials. Even considering the more specialized work – such as billing, Plaintiff does not establish that she was required to personally invest in equipment. Further, she had no ability (at this time) to hire or fire personnel. As such, this factor favors the Defendant.

### (d) Whether Special Skills are Required

The fourth factor is whether the services rendered require any special skills. By a small margin, this factor favors Plaintiff. The majority of Plaintiff's work during the September 2011 though mid-February 2012 time frame consisted of work at the front desk. Plaintiff was trained on the basic uses of CERNER – a software program utilized by medical offices for a variety of functions – including, but not limited to, billing, diagnosis, notes, insurance, appointment scheduling, and checking-in patients. *See* Doc. 69, Atch 2, Morrison Deposition, Vol. I, p. 49:14

---

[1] Though Plaintiff later became the Office Manager, for the purposes of the minimum wage claim, she was not yet a manager.

– 50:25.  Initially, Plaintiff was instructed on how to check in patients.  This would not be a special skill, but rather a basic function of running the front desk.  However, insurance billing and coding is a more specialized skill.  Plaintiff's deposition testimony indicates that she did the "uCern training modules" and learned insurance billing after a conversation with her and Nancy "because they had issues with billing." *Id*. at p. 50:11 – 51:15.  As the insurance billing training occurred prior to Plaintiff becoming a paid employee, this specialized skill tips in Plaintiff's favor.

### (e) Degree of Permanency and Duration of the Working Relationship

The fifth factor considers the degree of permanency and duration of the working relationship. This factor points strongly toward employee status in Plaintiff's favor.  While the relevant period discussed for the minimum wage is only September 2011 through mid-February 2012, Plaintiff's entire work history with the Veale Practice is relevant for this determination.  The entire work history (considering the disputed "volunteer time" and her paid time) consisted from September 2011 through August 19, 2014 – almost three years in total.  These facts suggest substantial permanence of the relationship.  This factor favors Plaintiff.

### (f) Service is Integral to the Alleged Employer's Business

The sixth factor considers the extent to which the service rendered is an integral part of the Veale Practice's business. This factor weighs clearly and strongly toward employee status. Plaintiff acted as a receptionist and managed the front desk.  Viewing the facts most favorably towards the Plaintiff they establish she answered the phones, checked-in patients, collected co-pays, used insurance billing software, cleaned up the lobby and waiting area, and determined whether patients' insurance claims had been submitted and paid.  *See* Doc. 69, Morrison Deposition, Vol. I, p. 49:1 -51:15, 54:23-55:25.  Further, the evidence clearly shows the

receptionist position was paid before Plaintiff started "volunteering" and was paid afterwards.

### (g) Summary of Court

Balancing the six factors, four favor Plaintiff and two favor Defendant. The Court acknowledges, like the district courts in Texas and Wisconsin, that the six factor "economic reality" test is ill-suited to ultimately determine employee status. Further, quantity of factors is not the only consideration. The Court would be remiss if it did not point out that Plaintiff knew she would not get paid when she first started "volunteering" and Nancy Veale was actually the one to suggest Plaintiff should get paid. *See* Doc. 48:4 - 49:2. This Court's "seventh factor" weighs heavily in favor of the Defendant. However, case law on "volunteers" in the *for-profit* arena of the FLSA is sparse outside of the realm of internships which is clearly inapplicable here. Thus, the Court returns to the plain language of the statute – "to suffer or *permit to work*." 29 U.S.C. § 203(g) (emphasis added). The Veale Practice allowed Plaintiff to perform duties and roles that were paid both before and after Plaintiff's "volunteering."

Ultimately, the Court determines summary judgment cannot be granted based upon the current motion because the factors rely so heavily on factual determinations that cannot be resolved at this stage of the proceeding. *See, e.g. Wells v. Gourmet Servs.*, Civ. Act. No. 2:13-cv-516-WKW, 2016 U.S. Dist. LEXIS 67035, *17, 2016 WL 2983501, *5 (M.D. Ala. May 23, 2016) (C.J. Watkins); *Quarles v. Halmer*, Civ. Act. No. 1:10-cv-1787-RLV, 2012 U.S. Dist. LEXIS 191831, *6, 2012 WL 12836656, *3 (N.D. Ga. Nov. 28, 2012) (J. Vining) ("[B]ecause the court concludes that there remain[] genuine disputes of fact over the degree of the plaintiff's economic dependence as well as key aspects of the economic reality test, the court cannot grant summary judgment as a matter of law."). Because the burden of proving and exemption to the FLSA rests with the employer and the Court *must* construe facts in the light most favorable to the

Plaintiff, the Veale Practice fails in its burden here.  The Court declines to engage in speculation as to whether Plaintiff will ultimately prevail at trial.

### ii. Statute of Limitations

Defendant also argues that the claims for any actions before October 2, 2014 are barred by the statute of limitations.  This includes the entirety of the minimum wage claim – September 2011 until mid-February 2012.

The statute of limitations for claims under the FLSA generally is two years, but if the claim is one "arising out of a willful violation," the statute of limitations extends to three years.  29 U.S.C. § 255(a).  To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about it.  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L.Ed.2d 115 (1988)).  "A willful violation may be found when the employer disregarded the very possibility that it was violating the statute."  *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1323 (11th Cir. 2007) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003)) (internal quotations omitted).  But, the acts are not considered willful where negligent or "an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA."  *Id*. at 1324.  The determinations of willfulness and good faith are mixed questions of fact and law.  *Id*.; *see also Ojeda-Sanchez v. Bland Farms, LLC*, 499 Fed. Appx. 897, 903 (11th Cir. November 12, 2012) (citing *Allen* and stating same).

Because the Court cannot determine whether Defendant's willfulness without first determining whether the Veale Practice actually violated the FLSA, the Court does not address

the issue of willfulness at this juncture. *See Allen*, 495 F.3d at 1324 (explaining that the determination of whether a defendant's violation of the FLSA was willful "must be reserved until it is determined whether a violation of the FLSA occurred"). Further, "[t]he willfulness or good faith question is answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the judge to determine whether to award liquidated damages." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1282 (11th Cir. 2008) (quoting *Alvarez Perez*, 515 F.3d at 1162); *see also* Eleventh Circuit Pattern Jury Instruction (Civil), Instruction 4.14 at p. 246-47 (citing *Morgan* and reiterating willfulness as relating to statute of limitations is answered by the jury while willfulness related to liquidated damages is answered by the Court). As such, summary judgment is due to be denied as to the statute of limitations question and as before, the Court declines to speculate on whether Plaintiff will ultimately prevail on this question at trial.

**B.     Count II – Overtime**

Congress enacted the FLSA "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S. Ct. 1186, 1194, 92 L. Ed. 1502 (1948). An employee who works in excess of forty hours in a work week must be paid overtime and one and half times his or her regular rate. 29 U.S.C. § 207(a)(1). "It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. 'If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.'" *Allen*, 495 F.3d at 1314 (quoting *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994)). A FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the Defendant

knew or should have known of the overtime work. *Id*. at 1314-15 (citation omitted); *see also Wagner v. Lee Cnty*, 2017 U.S. App. LEXIS 1900, *27, 2017 WL 456430, *10 (11th Cir. Feb. 2, 2017) (citing *Allen* and repeating elements).

In evaluating an overtime FLSA claim, the employee bears the initial burden of proving overtime hours without compensation, but the burden is relaxed when the employer fails to keep accurate time records. *Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, ---, 136 S. Ct. 1036, 1046-47, 194 L. Ed. 2d 124 (2016); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013). Once the burden is relaxed, the employee carries her burden if she establishes that she performed work for which she was not compensated and if she comes forward with "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Lamonica*, 711 F.3d at 1315 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed 1515 (1946)); *see also Wagner*, 2017 U.S. App. LEXIS 1900, *27, 2017 WL 456430, *11 (citing *Lamonica*). The burden then shifts to the employer who "must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Allen*, 495 F.3d at 1316 (citation omitted); *see also Medrano v. Inv. Emporium LLC*, 2016 U.S. App LEXIS 21719, *7, 2016 WL 7104907, *3 (11th Cir. Dec. 6, 2016) (quoting *Allen*).

In the case involving Morrison, she claims she regularly worked approximately 25-30 hours over the standard 40-hour workweek for which she was not compensated. However, as the office manager from July 2012 to her termination, Plaintiff was the very person responsible for administering the Veale Practice's timekeeping and reporting system. Additionally, as discussed extensively in the Court's spoliation opinion, the Court previously found that Plaintiff

deliberately and in bad faith deleted emails from one of the Veale Practice email accounts and established the 2-step verification process to deny access to the account. *See generally* Doc. 92.[2] As the sanction for the spoliation, the Court imposed a mandatory and unrebuttable adverse inference instruction which related to Plaintiff's overtime claim. Specifically, the Court ordered as follows:

> Plaintiff is precluded from disputing the accuracy of the time records created and submitted by the Plaintiff when she worked as the Office Manager for the Defendant. The Court imposes an evidentiary presumption limiting Plaintiff to the time records that she created while she worked at the Defendant's Practice. *See* Doc. 87 at p. 2.
>
> The fact-finder must accept as true the time cards / timesheets created by Plaintiff while she worked for the Veale Practice. Plaintiff is precluded from submitting evidence in dispute of the time cards that she herself created to reflect her hours while working at the Veale Practice. *See* Doc. 92 at p. 15.

As a result of that sanction and adverse inference instruction, no further analysis is necessary as it pertains to Plaintiff's overtime claim. The time cards firmly establish Plaintiff's working hours at forty-hours per week. *See* Doc. 69, Atch 1, Exhibit A to Declaration of Charles J. Veale, M.D.[3] As those facts are deemed admitted and cannot be rebutted, summary judgment is appropriate because there are no material facts in dispute.[4]

**C.     Liquidated Damages and Overtime**

---

[2]     The Court need not repeat its analysis and findings related to the sanction here. Rather, the Court incorporates by reference its findings of fact and conclusions of law from the Memorandum Opinion regarding the spoliation and ultimate sanction. *See* Doc. 92.

[3]     The time cards are also referenced in the Declaration by Nancy Veale as Exhibit A. Further, the motion for summary judgment itself refers to the time cards attached to Nancy Veale's Declaration. However, a careful review of the docket sheet (and the courtesy copy provided by Defendant to the Court) establishes that Defendant failed to attach the time cards to Nancy Veale's declaration. However, Plaintiff does not dispute the accuracy of the time cards attached to Dr. Veale's declaration.

[4]     Plaintiff concedes this point when stating in her response to summary judgment: "As a result of this [sanctions] ruling, Plaintiff's counsel does not see any remaining issues to be addressed at this time regarding Plaintiff's overtime claim. Thus, this Response will be limited to addressing the non-payment of minimum wages to the Plaintiff from October 2, 2011 through mid-February of 2012." *See* Doc. 95 at p. 1-2.

Defendant argues in its reply that Plaintiff failed to address its argument on liquidated damages and attorney's fees.  However, as liquidated damages and attorney's fees are only a matter to be addressed when liability has already been determined.  As the Court has already determined that Count I (minimum wage) has issues left for resolution by a jury, discussion on summary judgment on any issues for damages is premature.  "The judge and jury answer what is essentially the same question for two different purposes. The willfulness or good faith question is answered *first* by the jury to determine the period of limitations *and then, if there is a verdict for the employee*, again by the judge to determine whether to award liquidated damages." *Morgan*, 551 F.3d at 1282 (quoting *Alvarez Perez*, 515 F.3d at 1162) (emphasis added).

## V.  CONCLUSION

Based on the analysis contained in this Memorandum Opinion, the Defendant's Motion for Summary Judgment (Doc. 68) is GRANTED in part and DENIED in part.  The motion is GRANTED as to Count II of the Complaint (FLSA – Overtime).  The motion is DENIED as to Count I (FLSA – Minimum Wage), Liquidated Damages, and Attorney's Fees.  Those matters remain for resolution at trial.

DONE this 23rd day of March, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE