IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KARLA MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-cv-1020-TFM |
| | ) | [wo] |
| CHARLES J. VEALE, M.D., P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties pursuant to 28 U.S.C. § 636(c).  *See* Docs. 45, 46.  Pending before the Court is the Joint Motion for Approval of Plaintiff's Acceptance of Defendant's Offer of Judgment (Doc. 121, filed 9/14/17).

In addition, Defendant previously filed a Status Report (Doc. 125, filed 10/20/17) which the Court now construes as a "Motion to Reinstate" the various motions for attorneys' fees (Docs. 93, 114, and 115).  It is ORDERED that the motion to reinstate is GRANTED and those motions are reopened.  Therefore, also pending are Defendant's Motion for Attorney's Fees (Doc. 93, filed 2/10/17), Plaintiff's Petition for Attorneys' Fees, Expenses and Costs (Doc. 114, filed 8/25/17), and the former counsel's Petition for Attorneys' Fees (Doc. 115, filed 8/25/17). The Court held a hearing on the matters on December 1, 2017 after negotiations between the parties reached an impasse.  After a review of the motions, responses, oral arguments, and relevant law, the Court issues this memorandum opinion and order.

### I. BACKGROUND AND PROCEDURAL HISTORY

The procedural history has been previously recited in great detail in the memorandum

opinion on the motion for sanctions and memorandum opinion on the motion for summary judgment. *See* Docs. 87, 92, 98. The Court incorporates by reference the detailed facts and conclusions from those opinions. In sum, the Court found that Plaintiff Morrison deliberately and with bad faith destroyed evidence. *See* Doc. 92. After the Court issued its order and opinion, Defendant filed its request for attorney's fees. *See* Doc. 93. Defendant requests a total of $22,680.00 for fees related to the sanctions motion. *See* Doc. 93 at p. 1. Specifically, counsel requests a rate of $450.00 per hour for 50.4 hours of work. The Court issued an order directing Plaintiff to show cause why the motion should not be granted. Plaintiff timely responded in opposition to the motion for attorney's fees. *See* Doc. 97. Plaintiff avers that the extensive relief imposed in the ruling on the motion for sanctions and the broad discretion on whether fees and expenses should be imposed, requests that the relief already given in the motion for sanctions be sufficient. Plaintiff further argues the awarding of fees and expenses would be excessive. *Id*. Alternatively, even if the Court did award fees and expenses, Plaintiff opposes the hourly rate and the amount of time spent. The motion related to the Defendant's attorney's fees is now fully briefed and ripe for review.

Subsequent to the Defendant's motion for attorney's fees, on March 23, 2017, the Court also issued its Memorandum Opinion and Order on the Motion for Summary Judgment wherein the Court granted summary judgment as to the Plaintiff's overtime claim and denied summary judgment as to Plaintiff's minimum wage claim. *See* Doc. 98. Concurrently, the Court issued an order setting the case for a status conference and instructed that "the parties shall not incur any additional attorneys' fees, costs, or expenses with the exception of reviewing this order, reviewing the Memorandum Opinion issued this same date, and any communication to the clients regarding this order and ruling on summary judgment. If the parties need to incur

additional expenses outside of those parameters, they should first contact the Court." *See* Doc. 99. The status conference was set for the following week. At the status conference, the Court suggested the possibility of mediation and also discussed resetting the trial and corresponding pretrial deadlines. The trial was reset for September 18, 2017. *See* Doc. 102.

On August 4, 2017, the parties filed a Notice of Acceptance of Offer of Judgment and requested cancellation of the pretrial conference and trial. *See* Doc. 110. The parties also indicated that attorney's fees for both sides remained an issue and further briefing would be needed. *See* Doc. 111. Plaintiff timely filed her motions for attorneys' fees and bill of costs. *See* Docs. 114, 115, and 116; *see also* Doc. 18, Notice of Attorneys' Lien. The Court also entered an order requesting a copy of the Offer of Judgment and a Joint Motion to Approve Settlement under FLSA.

## II. Offer of Judgment and Approval

Federal Rule of Civil Procedure 68 provides, in relevant part, that at least 14 days before trial, a defendant may serve upon a plaintiff an offer of judgment to be taken against the defendant for money with cost then accrued. Fed. R. Civ. P. 68(a). Courts are somewhat mixed on the use of an offer of judgment in Fair Labor Standards Act ("FLSA") cases. However, what is clear is that in FLSA cases, Courts must still determine whether a settlement is a fair and reasonable resolution in order to give it final and binding effect. *See, e.g., Arencibia v. Miami Shoes, Inc.*, 113 F.3d 1212 (11th Cir. 1997) (discussing FLSA settlements in the context of Rule 68 offers of judgment); *Silva v. Miller*, 307 F. App'x 349 (11th Cir. 2009) (discussing requirement of judicial oversight in context of an offer of judgment even when full claimed

amount is paid when attorney's fees are involved);[1] *Norman v. Alorica, Inc.*, 2012 U.S. Dist. LEXIS 159512 (S.D. Ala. Nov. 7, 2012) (same); *Baxter v. Automated Gate Sys., Inc.*, 2010 U.S. Dist. LEXIS 100566, 2010 WL 3730900, *2 (M.D. Fla. Sept. 2, 2010) (same); *Delgado v. Excel One, Inc.*, 2009 U.S. Dist. LEXIS 43476, 2009 WL 1456452, *1 (M.D. Fla. May 22, 2009) (same); *Urshan v. Orlando Utilities Comm'n*, 2009 U.S. Dist. LEXIS 68066, 2009 WL 2392060, *2 (M.D. Fla. Apr. 20, 2009) (same).

In the case at hand, Plaintiff originally sought back pay for the minimum wage claim in the amount of $7,160.01 (including interest accrued). *See* Doc. 95 at p. 8 and Ex. F. Later, in the joint motion for approval of the accepted offer of judgment, Plaintiff increased her claim to $9,214.76. While normally that would be a matter of concern for the court, it is not a factor in this particular instance. It seems apparent from the Offer of Judgment and correspondence relating to it that the amount pertains to both the minimum wage principal amount and liquidated damages.

Based on a review of the Offer of Judgment, it is clear that Plaintiff was compensated for that amount plus liquidated damages and a small additional amount rounded up regardless of which number is used. *See* Doc. 121, Ex. B. Specifically, "the judgment shall provide for an award of damages, including compensatory and liquidated damages, in the total amount of $10,000.00." *Id.* at (1).[2, 3] The Offer of Judgment also provided for an award of reasonable fees

---

[1] Dicta seems to suggest that this may only apply in a context of when attorney's fees are deducted from the overall settlement. However, out of an abundance of caution, the Court reviews the Offer of Judgment to determine whether it is a fair resolution to a bona fide dispute.

[2] The Court agrees with the Defendant's statement in correspondence (Doc. 118, Ex. A at p. 76) that binding precedent precludes recovery of both liquidated damages and prejudgment interest under FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 714-16, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Joiner v. Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (citations omitted).

and costs. *Id.* at (2) and (3). Finally, the offer of judgment preserved appellate rights. *Id.* at (4). As the total value clearly covers Plaintiff's minimum wage claim, the Court finds that the settlement is a fair and reasonable settlement of a bona fide dispute for the sole remaining claim. Therefore, the joint motion for approval of settlement is approved.

## III. Attorneys' Fees

In evaluating a request for attorneys' fees, the Court applies the "lodestar" method. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). The "lodestar" is found by "multiply[ing] the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services." *Neptune Designs*, 469 F.3d at 1359. The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). To satisfy this burden, the fee applicant

---

[3] Caselaw presumes that the Court would address the willfulness question after liability had been established. The determination of willfulness and good faith are mixed questions of law and fact. *Allen v. Bd. Of Public Educ.*, 495 F.3d 1306, 1324 (11th Cir. 2007); *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 903 (11th Cir. Nov. 12, 2012) (citing *Allen* and stating same). "The willfulness or good faith question is answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the judge to determine whether to award liquidated damages." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1282 (11th Cir. 2008) (quoting *Alvarez Perez*, 515 F.3d at 1162); *see also* Eleventh Circuit Pattern Jury Instruction (Civil), Instruction 4.14 at p. 246-47 (citing *Morgan* and reiterating willfulness as relating to statute of limitations is answered by the jury while willfulness related to liquidated damages is answered by the Court). "The judge and jury answer what is essentially the same question for two different purposes. The willfulness or good faith question is answered *first* by the jury to determine the period of limitations *and then, if there is a verdict for the employee*, again by the judge to determine whether to award liquidated damages." *Morgan*, 551 F.3d at 1282 (quoting *Alvarez Perez*, 515 F.3d at 1162) (emphasis added). "[T]he district court has *discretion* to reduce or deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA." *Id.* (internal quotations and citation omitted) (emphasis added). As the court's authority is discretionary, the Court declines to engage in the analysis of whether liquidated damages would have been awarded by the Court in light of the general philosophy of encouraging resolution.

shall supply to the court: (1) specific and detailed evidence from which it can determine the reasonable hourly rate for the community and (2) records evidencing time spent on different claims and setting out with sufficient particularity the general subject matter of the time expenditures so that the court can assess the time claimed for each activity. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

After determining the lodestar, the court then addresses whether the award should be adjusted upwards or downwards. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66, 106 S. Ct. 3088, 3098-99, 92 L. Ed. 2d 439 (1986); *Neptune Designs*, 469 F.3d at 1359. In conducting this inquiry, the court is guided by the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[4, 5] *See also Hensley*, 461 U.S. at 429-30, 103 S. Ct. at 1937-38 (endorsing the *Johnson* factors). These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[5] The Court notes that some doubt was cast on the *Johnson* factors in *Perdue v. Kenny A.*, 559 U.S. 542, 550-552, 130 S. Ct. 1662, 1671-72, 176 L. Ed. 2d 494 (2010). However, the Court views the *Perdue* holding as providing that the Lodestar method as an objective calculus is the controlling view for determining attorney's fees in fee-shifting statutes (such as FLSA) and the only point where the *Johnson* factors need be considered are when the Court considers an upward or downward departure from the figures determined by the Lodestar method. *See id.* at 552-56, 130 S. Ct. at 1673-74; *see also Ela v. Destefano*, 869 F.3d 1198, 1203-04 (11th Cir. 2017) ("In determining whether the lodestar is reasonable, 'the [district] court is to consider the 12 factors enumerated in *Johnson.*'").

*Hensley*, 461 U.S. at 430 n. 3, 103 S. Ct. at 1937 n. 3; *Johnson*, 488 F.2d at 717-19. Finally, when awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.

A.      **Defendants' Attorneys' Fees from Plaintiff's Spoliation and Sanction Opinion**[6]

On January 25, 2017, this Court entered a lengthy opinion which granted Defendant's motion for sanctions due to Plaintiff's spoliation of evidence. *See* Doc. 92. In the motion, Defendant requested attorney's as a part of the sanction, but did not include the supporting documentation as it was not yet fully determinable. Thus, at the end of the opinion, the Court instructed the defendant to file his requested attorneys' fees on or before February 10, 2017. Defendant timely filed his renewed motion for attorneys' fees with his specific amounts and supporting documentation. *See* Doc. 93. Specifically, he provided billing statements for the time spent on the deletion of emails and corresponding sanctions motion. Defendant also submits an affidavit from another attorney supporting his requested rate.

The law is clear that the sanctions a court may impose against a party of spoliation of evidence include an award of attorney's fee incurred by the injured party as a result of the spoliation. *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1280 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005)). With regard to those fees, "the amount of fees and costs awarded may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct.'" *Id*. at 1287 (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)). As such, the Court turns to whether

---

[6]     Though this memorandum opinion encompasses the approval of the settlement of the minimum wage claim and attorney's fees pertaining to the sanctions opinion, the Court notes that those are separate and distinct issues. Thus, any award of attorney's fees for the sanction motion does not compromise Plaintiff's remaining minimum wage claim.

Defendant's requested amount is reasonable and appropriate under the circumstances.

Defense counsel seeks an award of $22,680.00 for fees related to the sanctions motion. *See* Doc. 93 at p. 1. This represented 50.4 hours or work at a requested rate of $450.00 per hour. Plaintiff opposes the imposition of attorney's fees and argues the sanction previously imposed is more than adequate to address the wrongdoing.[7] Perhaps the Court should have been clearer in its sanctions opinion, but the question of whether attorney's fees would be imposed was already impliedly answered when the court requested that Defendant file a "properly supported motion for attorney's fees." The award of attorney's fees remains part of the sanctions order. Thus, the sole question remaining is whether the fees sought are reasonable and what amount the Court will impose.

### i. Reasonable hourly rates

Defense counsel seeks $450 per hour, but acknowledges that his rate is the prevailing rate for the Atlanta, Georgia metropolitan area. Plaintiff argues that a more appropriate rate for the Middle District of Alabama (Montgomery) is $200-$250 for a lawyer with 17 years of experience. Therefore, Plaintiff proposes $212.50 as the midpoint between those amounts.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.3d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11, 104 S. Ct. 1541, 1547 n. 11, 79 L. Ed. 2d 891 (1984). The Court has reviewed the evidentiary submissions and arguments of the Defendant and Plaintiff with regard to the appropriate rate.

Defense counsel submitted an affidavit from Gary B. Andrews (another Atlanta based attorney) as well as his own affidavit. *See* Doc. 93 at p. 7-17. In both affidavits, they conclude

---

[7]  The Court imposed a mandatory evidentiary presumption that the time cards were accurate, and therefore deemed admitted and accepted as true. *See* Doc. 92 at p. 16.

the $450 rate sought is reasonable. In fact, Mr. Andrews indicates it is even slightly lower than he would expect from Mr. Moore based on his qualifications and experience. *Id.* at p. 17. Plaintiff submits a declaration from Matthew P. Teague as support for the assertion that the $450 rate sought is too high for the local area. Mr. Teague is a partner at the Montgomery-based firm Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. In his affidavit, he provides the prevailing rate for an attorney with 17 years of experience would be between $200 and $225 per hour. *See* Doc. 97, Ex. A. Although opinion testimony can satisfy an attorney's burden to prove reasonable hourly rates, "where there is a lack of documentation, a district court may make an independent judgment based on its own experience and knowledge concerning the rates charges by lawyers of similar skill in similar lawsuits in the same market area." *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1254 (M.D. Ala. 2000).

"In the Middle District of Alabama, skilled lawyers with twenty years or more experience may expect to receive $300 an hour, lawyers with ten years or more experience may receive between $200 and $250 an hour, and associates may expect to receive $150-185 an hour. In the Middle District of Alabama, paralegals may expect to receive between $50 and $85 an hour." *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 31 F. Supp. 3d 1354, 1360 (M.D. Ala. 2014) (Fuller, J.) (citations omitted); *see also Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F. Supp. 2d 1166, 1180 (M.D. Ala. 2008) (Watkins, J.); *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1163 (M.D. Ala. 2007) (Thompson, J.); *Gaylor v. Comal Credit Union*, Civ. Act. No. 2:10-cv-725-MHT, 2012 U.S. Dis. LEXIS 75972, 2012 WL 1987183 (M.D. Ala. 2012) (Thompson, J.) (using same fee structure).

While findings of other courts with regard to attorney's fees (even those within this same district) are not binding, the undersigned does find, in the Court's experience, the above

statement regarding rates to be essentially accurate within this district with some adjustments for inflation over the last few years. When looking to the rates requested by Defense counsel, the Court does find that they merit some reduction. The preliminary question is: what constitutes the "relevant legal community" for purposes of determining the prevailing market rate? "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Barnes*, 168 F.3d at 437 (citing *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994)). As this case was filed in the Middle District of Alabama – Northern Division, the Court finds that is the relevant market for this case. The rates requested by defense counsel are not entirely in line with the rates generally requested in the Middle District of Alabama. The rates requested by counsel are more in line with the rates appropriate for the Northern District of Georgia. As such, the Court adjusts the rate to $325.00 taking into consideration Mr. Moore's years of experience to include specialized experience in electronic discovery.[8]

### ii. Reasonable hours

Having determined the reasonably hourly rates for the services provided in the case, the Court now must address the number of hours reasonably expended on the matter. Plaintiff argues that several entries are "block time entries" and therefore should have 10-24% across the board reductions. *See* Doc. 97 at p. 3-5. The Court has carefully reviewed all of counsel's billing summaries. While there is some block billing, a review of the blocks establishes that it relates to the motion for sanctions and the deletion of the gmail account. Further, the time expended relating to the motion for sanctions is reasonable. The motion itself was

---

[8] Plaintiff argues for a reduction to $200-250. However, in the case Plaintiff cited (written by the undersigned in 2016), the Court also found a 17-year attorney to receive a $300 rate. As such, the Court is not persuaded to reduce the rate lower than that found by the same Court last year in a case that presented less complicated issues.

comprehensive, thoroughly researched, and supported by significant evidence. Therefore, after a careful review of the submitted billing statement, the Court finds the 50.4 hours spent were reasonable.

### iii. Adjustment to Lodestar Amount

Computation of the lodestar amount does not necessarily terminate the fee analysis. After determining the lodestar amount, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. The Court generally uses the *Johnson* factors in determining whether an increase or decrease is appropriate. Defendant prevailed on the heavily contested sanctions motion. However, as the Court is utilizing its inherent authority to impose attorney's fees as a sanction, the Court looks to whether any further adjustments are appropriate. The current amount approved after the reduction in rate is $16,380.00 (50.4 x $325). The Court finds that no further reduction or increase is needed.

### B. Plaintiff's Attorney's Fees

Plaintiff has two sets of attorneys' fees for review.[9] Her second counsel, David Arendall and Allen Arnold filed a Notice of Attorneys' Lien upon their withdrawal. *See* Doc. 18. In the lien, they seek $10,207.50 for attorneys' fees, costs, and expenses pursuant to the contract Plaintiff entered into with the law firm. *Id.* They attach the fee agreement signed by Plaintiff. *Id.*, Exhibit A. The original attorneys also submitted a more detailed motion for attorney's fees and bill of costs once a settlement had been reached. *See* Docs. 115-116.

Next, Plaintiff's current counsel Robert Childs, Jr. also submits a request for attorney's fees and costs. *See* Doc. 114. Originally, counsel requested $60,838.75 in attorneys' fees and

---

[9] The Court also notes Plaintiff initially employed Burr Foreman to represent her interests, but they never appeared in this case. Additionally, after the withdrawal of David Arendall and Allen Arnold, a third counsel (Travis Hargrove) appeared on Plaintiff's behalf. However, neither counsel submitted any requests for attorneys' fees.

$4,885.01 in costs. *Id*. at p. 2. However, after reviewing Defendant's response in opposition, counsel acknowledged that certain amounts were inadvertently included and should be excluded. Thus, the revised fee petition seeks $47,920.00 in attorneys' fees and $1,457.68 in costs accrued by the attorney and $2,741.48 accrued directly by Plaintiff. *See* Docs. 120, 122.

Ultimately, the Court will deal with a review of costs in a later section, but the Court must first look to whether attorneys' fees are warranted and if so, how to reconcile the two different motions for separate attorneys and finally what amount may be reasonable.

Turning first to whether attorney's fees are appropriate. Firstly, the Offer of Judgment clearly provides "for an award of reasonable attorneys' fees to Plaintiff for services rendered by her counsel up to and including the date of receipt of this offer that are attributable solely to Plaintiff's claim for alleged unpaid minimum wage, on the condition that Plaintiff must prove such fees in the manner provided by law." *See* Doc. 121, Exhibit A ¶ 2. Further, FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351.

### i. Current Counsel's fee petition

In the current case posture, there are two clear constraints placed on any recovery of attorney's fees and costs. First, Plaintiff was only the "prevailing party" as to the minimum wage claim. The overtime claim is precluded by the ruling on the motion for summary judgment. Next, by its very terms, the offer of judgment entitles Plaintiff only to reasonable attorneys' fees incurred as of July 28, 2017. As such, the Court will only consider Plaintiff's

revision to the petition for attorneys' fees.  *See* Doc. 120.  The Court will now analyze the hourly rates and time sought using the lodestar analysis previously discussed.  The starting point is articulated in this chart.

| Attorney/Paralegal | Years Experience | Hours | Rate | Total |
|---|---|---|---|---|
| Robert Childs (Attorney) | 45 | 116.30 | $400.00 | $46,520.00 |
| Karen Allen (Paralegal) | 20 | 11.20 | $125.00 | $1,400.00 |
| **Total** | | | | **$47,920.00** |

      **(a)**      **Reasonable hourly rates**

The Court finds that the rate requested in the fee petition for Mr. Childs is reasonable based on the prevailing market.  While Ms. Allen's rate may be slightly above the prevailing Montgomery market, it is also justifiable given her years of experience and J.D. degree.  As such, the Court finds both rates to be reasonable.

      **(b)**      **Reasonable hours**

The petition also seeks 11.20 hours for Ms. Allen and 116.30 hours for Mr. Child.  *See* Doc. 120, Ex. A.  Thus, the Court must look to whether those hours are reasonable.  At the outset, Plaintiff's chart is challenging to follow as entries seemingly cut off and spill over into another day.  For example, on 03/31/17, there are two entries for 3/31 which have two different time allocations (0.20 and 0.70), but the amounts don't clearly link to one particular time entry as the first 3/31 entry states 0.20 for "Conference call with Judge Moorer and Leighton Moore; Telephone conference with Karla and Gray Morrison re: desire to mediate and conference call with the Court; review of emails from L. Moore, Karen Allen and Karla Morrison re:"  The entry abruptly cuts off, but seems to continue on the 04/03/17 entry with "backpay calculation and response to same;"  *See* Doc. 120, Ex. A at p. 6.  As such, the Court is left with a 0.20 entry and

a 0.70 entry to decipher. At the December 1, 2017 hearing, Plaintiff reiterated his complaint of block billing for the Defendant's motion, yet his own submission seemingly lumps multiple events together as well. As best the Court can discern, the 0.20 time entry relates to the court's phone conference (which lasted approximately 11 minutes according to the Court's minute entry) and the 0.70 billing relates to counsel's telephone conference with his client and review of emails from defense counsel regarding back pay calculation. The Court uses this illustrative example as one sample of the difficulties in reviewing Plaintiff's time submission. Regardless, the Court will do its best analysis of the time submissions and whether they are reasonable.

Case law is clear that the burden is on the requesting party to establish fees with regard to each claim. Counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claim." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (the court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims). By Plaintiff's own admission, he did not keep billing entries on claims separate, but rather reviewed time records to remove time prior to submission to the court. Further, if work was done on both claims, then counsel simply divided the time in half. The Court agrees with the defendant in the response in opposition that this is not an appropriate solution in light of the wide disparity between the value of Count I and Count II and also provides the Court no ability to appropriately review the hours spent on *only* the minimum wage claim. Additionally, there are hours that the Court finds wholly unnecessary based on Plaintiff's failure to provide Defendant with an accurate number as to the minimum wage claim.

Correspondence is clear that as of April 4, 2017, Defense counsel put Plaintiff on notice

that an offer of settlement for the full amount of Plaintiff's minimum wage claim would be tendered and that he needed an accurate accounting on the exact amount sought including principal and liquidated damages. *See* Doc. 118, Exhibit at p. 75-80. The correspondence even indicated that if the amount of $9,067.50 was agreed upon then he would serve the offer the same day. Further, over the next couple of weeks, counsel repeatedly followed up on the request and whether Plaintiff would accept Defendant's settlement offer. As such, the Court finds that any attorneys' fees after April 4, 2017 are unnecessary because Defendant was prepared submit an offer of judgment that very day and Plaintiff's failure to respond was the sole basis for the delay. As such the Court excludes 35.4 hours from Mr. Childs and 9.8 hours from Ms. Allen for the post-summary judgment delay in providing Defendant a specific amount as to the minimum wage claim.[10] These hours would have never been spent working on this case had Plaintiff simply provided an accurate amount for the minimum wage claim in a timely manner. Consequently, that reduction already reduces the hours to 80.9 and 1.4 respectively.

Additionally, the delay in providing a precise claim amount is further evidence that Plaintiff did not spend much time on the minimum wage claim and always considered this case to be primarily an overtime claim. The fact that discovery never focused on the minimum wage claim nor did Plaintiff even have an accurate accounting when Defendant requested the precise number is reflective of the "value" previously placed on that claim by the Plaintiff.

The Court also agrees that the amount of time spent on Plaintiff's response to summary judgment fails to pass muster. Plaintiff's counsel – to his credit – conceded in the response that as a result of the sanction ruling, the overtime claim died. Specifically, the response stated "[a]s a result of this ruling, Plaintiff's counsel does not see any remaining issues to be addressed at this

---

[10] This excludes all time entries for RFC from April 6, 2017 to July 28, 2017. This also excludes all 2017 entries for KGA.

time regarding the Plaintiff's overtime claim. Thus, this Response will be limited to addressing the non-payment of minimum wages to the Plaintiff from October 2, 2011 through mid-February of 2012." *See* Doc. 95 at p. 1-2. However, despite that concession, viewing from the perspective of all time entries clearly and directly attributable to the summary judgment motion, Plaintiff seeks 45.55 hours. And, this does not include some time entries which may or may not be attributable to the response to summary judgment. This amounts to $18,220 for a 9-page pleading (including non-substantive portions) with only 20 pages of exhibits. The Court agrees with Defendant's assessment of the volume of hours spent on this responsive pleading. *See* Doc. 118 at p. 6. As such, the Court reduces the time to a generous fifteen total hours which includes research, drafting, and finalizing exhibits. This reduces Mr. Childs hours by an additional 30.55 hours.

Next, Defendant also identifies the 2.5 hours spent summarizing Plaintiff's deposition testimony on 7/6/16, 7/7/16, and 7/8/16. The Court agrees that the portions attributable solely to the minimum wage would not have taken 2.5 hours. In looking at Plaintiff's deposition (Doc. 69, Ex. 2 at p. 43-48), the reviewing and summary would take approximately 15-20 minutes. Therefore, the Court will credit 0.3 hours for a reduction of 2.2 hours.

Next, there are two separate time entries (3/23/17 and 3/29/17), where there are line entries of 0.50 hours for reviewing the Court's 3-page amended scheduling order (Doc. 89) for a total of 1 hour to review a short administrative order which has the same scheduling language as previous orders (and boilerplate for the Middle District of Alabama) with the only difference being new deadlines. At most, this would have been a single entry of 0.1 hours. Therefore, the Court reduces the time by 0.90 hours.

Finally, as previously noted, the Court does not agree with a wholesale 50% division of

time entries attributable to both the overtime and minimum wage claims. Plaintiff's counsel stated in his affidavit that "[i]n those areas where work was done on both of the Plaintiff's overtime and minimum wage claims simultaneously, such as the initial meetings with the Plaintiff and the review of the depositions of the Plaintiff, Dr. Veale, and Nancy Veale, I reduced my time, and any time of Ms. Allen, by 50%." *See* Doc. 114, Exhibit 1 at p. 3 n. 1. The Court does not have copies of the original billing statement prior to counsel's reduction to include the 50-50 split between claims nor what entries were fully deleted (if any). Thus, the Court lacks the information to analyze whether the time spent (before and after reduction) was reasonable as to the minimum wage claim. As a result, the Court feels compelled to reduce the time by a further 10 hours. This is due to the previous discussion on the obviously lack of consideration this particular claim received prior to the Court's sanction determination which correspondingly resulted in the grant of summary judgment on the overtime claim. Prior to that point, the Plaintiff focused almost exclusively on the overtime as shown by the body of evidence presented to this Court as attachments to the sanctions motion, summary judgment motion, response to summary judgment, discovery submissions, and the lack of clear answer by the Plaintiff when a number was requested for an Offer of Judgment.

Lastly, the Court finds that the remaining time spent by Ms. Allen is appropriate. Based on the above reductions, the time approved by the Court is evidenced in the chart below.

| Attorney/Paralegal | Years Experience | Hours | Rate | Total |
|---|---|---|---|---|
| Robert Childs (Attorney) | 45 | 37.25 | $400.00 | $14,900.00 |
| Karen Allen (Paralegal) | 20 | 1.4 | $125.00 | $175.00 |
| **Total** | | | | **$15,075.00** |

### (c) Adjustment to Lodestar Amount

As previously discussed, computation of the lodestar amount does not necessarily terminate the fee analysis and the Court must consider the necessity of an adjustment for results obtained using the *Johnson* factors. After a careful review, the Court finds no further reduction or enhancement is necessary.

### ii. Former Counsel's fee petition

Plaintiff's former counsel – David Arendall and Allen Arnold – previously filed a Notice of Attorneys' Lien and later a Petition for Attorney's Fees. *See* Docs. 18, 115. These two-counsel represented Plaintiff prior to the filing of the complaint, at the inception of this lawsuit, and up to the point of their withdrawal on March 9, 2015. *See* Docs. 1, 12, 14, 15. Shortly after their withdrawal, counsel filed the Notice of Attorneys' Lien for $10,207.50. *See* Doc. 18. After being notified of the acceptance of the Offer of Judgment, former counsel filed their Petition for Attorney's Fees. *See* Doc. 115. In the petition, the two attorneys collectively request an award of $7,045.00 in fees -- $3,015.00 for Mr. Arendall and $4,030.00 for Mr. Arnold. *Id*. at p. 4, 10.

Defendant opposes the award of any attorney's fees to Plaintiff and instead asserts that the lien excludes the award of fees and rather is solely a quantum merit claim pursuant to their contract. *See* Doc. 119 at p. 3-5. However, that argument would then in turn mean that the Offer of Judgment would *not* be a full resolution of Plaintiff's claim as the original attorney's fees would be deducted from Plaintiff's recovery (which the Court would not approve). Moreover, the parties cannot contract in derogation of FLSA's provisions. *See Silva*, 307 F. App'x at 351 (citing *Lynn's Food*, 679 F.2d at 1352). Though perhaps the better method of submission for the original attorney's fees would have been for current counsel to include it in a single (or joint) motion, ultimately, the Court views it as "one pot of money" for Plaintiff to recover attorney's

fees. Further, attorney's fees are awarded to the prevailing party, not to the prevailing party's attorney. *See Astrue v. Ratliff*, 560 U.S. 586, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010) (The Supreme Court unambiguously held that attorney's fees are awarded to the prevailing litigant – not to prevailing litigant's attorney – and are therefore also subject to any offset for debts.); *Reeves v. Astrue*, 526 F.3d 732 (11th Cir. 2008) ("attorney's fees are awarded to the prevailing party, not to the prevailing party's attorney.").[11] Therefore, the Court will consider appropriate attorney's fees for the prior attorneys who initiated this lawsuit.

Former counsel were unavailable for the December 1, 2017 hearing on the approval of settlement and attorney's fees. However, the Court will consider the motion on the written pleadings and finds that oral argument would not likely aid in its evaluation. As previously discussed, only fees relating to the minimum wage claim are recoverable and the burden is on the fee petitioner to substantiate such claims.

| Attorney | Years Experience | Hours | Rate | Total |
|----------|------------------|-------|------|-------|
| David Arendall | 42 | 6.7 | $450.00 | $3,015.00 |
| Allen Arnold | 13 | 12.4 | $325.00 | $4,030.00 |
| **Total** | | | | **$7,045.00** |

### (a) Reasonable hourly rates

The Court finds that the rate requested in the fee petition for Mr. Arendall should be the same as the rate previously approved for Mr. Childs as the market's prevailing rate. Therefore, his rate will be reduced to $400.00.

Mr. Allen's requested rate is not in line with the prevailing market – Montgomery

---

[11] To be clear, though the fees are awarded to the prevailing party, this does not imply that they ultimately "belong" to Plaintiff. The attorneys all have the legal means to collect their respective fees from the Plaintiff. The Court further directs that though the payment is made out to Plaintiff, it should be sent to the Plaintiff care of her current attorney. The Court leaves it to counsel to work with the Plaintiff on the appropriate distribution of fees.

(Middle District of Alabama).  Further, his requested rate is actually *higher* than the rate listed on his time report.  *See* Doc. 115, Exhibit 9.  His time report lists his rates as $285.00 - $300.00.  As such, the Court does not find his $325.00 requested rate supportable.  Rather, the Court will approve the $285.00 rate which is supported – both by his supporting documents and the prevailing market rate for an attorney with 13 years of experience.  The resultant chart applying the rates is as follows:

| Attorney | Years Experience | Hours | Rate | Total |
|----------|------------------|-------|------|-------|
| David Arendall | 42 | 6.7 | $400.00 | $2,680.00 |
| Allen Arnold | 13 | 12.4 | $285.00 | $3,534.00 |
| **Total** | | | | **$6,214.00** |

**(b)    Reasonable hours**

The time sheets submitted have 16.90 hours for Mr. Arendall and 20.1 hours for Mr. Allen.  The fee petition only seeks 6.7 hours for Mr. Arendall and 12.4 hours for Mr. Allen with the applicable entries being highlighted.  Upon review, the highlighted entries for Mr. Arendall do reach a total of 6.7 hours.  While the highlighted entries for Mr. Allen total 13.0, he reduced the 1/12/15 entry from 0.90 hours to 0.30 hours to reach the total of 12.4 hours. However, counsel provides no indication as to how those particular time entries were selected.  Up front, the Court notes that counsel were released by the Court on March 9, 2015.  *See* Doc. 15.  Further, by their own acknowledgement, they seek reimbursement for time spent on preparation and attendance for the sanctions motion.  This was not part of the successful minimum wage claim and therefore must be excluded.  This reduces Mr. Arendall's time by 1.5 hours for a new total of 5.2 hours and reduces Mr. Allen's time by 4.3 hours for a new total of 8.1 hours.

Next, while preparation of a fee petition may be recoverable in some cases, here, the very terms of the offer of judgment preclude any fees after July 28, 2017.  Therefore, those fees

cannot be approved. This further reduces Mr. Allen's time by 2.4 hours for a new total of 5.7 hours. These are the easy time entries for the court's review which provides a new baseline as follows:

| Attorney | Years Experience | Hours | Rate | Total |
|---|---|---|---|---|
| David Arendall | 42 | 5.2 | $400.00 | $2,080.00 |
| Allen Arnold | 13 | 5.7 | $285.00 | $1,624.50 |
| **Total** | | | | **$3,704.50** |

The remaining problem before the Court is that the time reports submitted have no separation in billing for the different claims. Rather, the minimalistic description provides the Court zero assistance in determining what hours apply to the minimum wage claims versus the overtime claim. As noted earlier, counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claim." *Hensley*, 461 U.S. at 437. In their own fee petition, counsel state "[t]he time expended was reasonably necessary for the successful prosecution of Plaintiff's **claims**." *See* Doc. 115, p. 3-4, ¶¶ 5-6 (emphasis added). As such, the takeaway is that the time submitted related to *both* claims – which cannot be fully recovered. Defendant proposes that petitioners should get only six percent of the eligible claimed time. However, the Court prefers to look to line by line at the remaining claimed time to reach its own determination as to the appropriate time. *See, e.g. Webster v. Fulton Cty.*, 112 F. Supp. 2d 1339, 1352 (N.D. Ga. 2000) (Rather than exclude the entire entry, the Court attempts an apportionment of each activity in an evenhanded manner.). As previously discussed as it pertains to the current Plaintiff's counsel, it is clear from the record that her prior counsel also did not spend much time on the minimum wage claim. *See, e.g.* Doc. 10 at p. 1 (Plaintiff's Position).

Moreover, although "there is nothing inherently unreasonable about a client having multiple attorneys," *Barnes*, 168 F.3d at 432 (quoting *Norman*, 836 F.2d at 1302), courts should

exclude hours performed by two attorneys that are unnecessary and redundant. *See Duckworth*, 97 F.3d at 1397-98 (reducing the hours of each attorney where both attorneys attended all depositions). "To recover for tasks performed by more than one attorney, the burden is on the fee applicant to show that the time spent by each attorney 'reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation.'" *George v. GTE Directories Corp.*, 114 F.Supp.2d 1281, 1291 (M.D. Fla. 2000) (quoting *Barnes*, 168 F.3d at 432) (internal modifications omitted).

The Court summarizes its findings as follows:

| Attorney | Description of Time Entry | Hours Requested | Description of Reduction | Hours Approved |
|---|---|---|---|---|
| David Arendall | 9/15/14 Client Conference Preparation of Complaint | 2.0 | Out of 33 total paragraphs, 5 related explicitly to Count I; the parties, jurisdiction, prayer for relief related to both claims; part of the statement of facts related to Count I. The remaining amount related solely to Count II which cannot be claimed.<br><br>Out of the 2.0 hours, the Court will credit 0.7 hours to the minimum wage claim. | 0.70 |
| David Arendall | 12/29/14 Emails to and from Defendant; preparation of discovery | 1.2 | The Court has no method of reviewing the requested discovery or emails as they do not appear in the record. What is clear from the record is that the bulk of the time from all Plaintiff's counsel was spent on the larger overtime claim.<br><br>Out of the requested 1.2 hours, the Court will credit 0.40 hours to the minimum wage claim. | 0.40 |
| David Arendall | 12/31/14 Emails with client; Draft RPPM; Initial | 0.70 | The Court has no method of reviewing emails, initial disclosures, or the letter to client. The final version of the RPPM | 0.20 |

| | | | | |
|---|---|---|---|---|
| | Disclosures; letter to client | | (which the Court presumes is the Report of Parties' Planning Meeting) is in the record (Doc. 10). There is nothing in the document which discusses the minimum wage claim. Rather, Plaintiff's position (on page 1) only discusses the overtime claim.<br><br>Out of the requested 0.70 hours, the Court will credit only 0.20 hours for the minimum wage claim. | |
| David Arendall | 2/9/15 Discovery prep; emails from client | 0.80 | This nonspecific line item provides no method for the Court to review what pertains exclusively to the minimum wage claim. However, in light of the minimal time spent on Count I by all Plaintiff's counsel, the Court must reduce the time.<br><br>Out of the requested 0.80 hours, the Court will credit only 0.20 hours for the minimum wage claim. | 0.20 |
| David Arendall | 2/12/15 | 0.50 | This nonspecific line item provides no method for the Court to review what pertains exclusively to the minimum wage claim. The initial disclosures do not seem to appear in the record. However, in light of the minimal time spent on Count I by all Plaintiff's counsel, the Court must reduce the time.<br><br>Out of the requested 0.50 hours, the Court will credit only 0.20 hours for the minimum wage claim. | 0.20 |
| | | | **Total Hours Approved** | **1.7** |
| Allen Arnold | 9/25/14 edited 2nd draft | 0.30 | Out of 33 total paragraphs, 5 related explicitly to Count I; the | 0.10 |

| | | | parties, jurisdiction, prayer for relief related to both claims; part of the statement of facts related to Count I. The remaining amount related solely to Count II which cannot be claimed. Further, the Court already credited time to Mr. Arendall the primary drafter.<br><br>Out of the 0.30 hours, the Court will credit 0.1 hours to the minimum wage claim. | |
|---|---|---|---|---|
| Allen Arnold | 1/7/15 letter to client; review of 29 CFR 541.200; reviw [sic] of client's letter | 3.30 | The Court has no method of reviewing client letters. However, the statute referenced does not appear to relate to the minimum wage claim.<br><br>Out of the requested 3.30 hours, the Court will credit no time as there does not appear to be a basis for linking to the minimum wage claim. | 0.0 |
| Allen Arnold | 1/12/15 regarding letter, settlement [sic] | 1.80 | Again, the Court has no certain method of reviewing letters. However, a 2-page letter dated 1/8/15 from Deanna Forbush to Allen Arnold and David Arendall is attached as Exhibit 2 to the Declaration of Leighton Moore on Doc. 118-1. Though not made clear by Plaintiff's counsel, the Court can extrapolate this is the settlement discussed in the time entry. The letter itself relates to settlement discussions and a counter offer for all claims. Thus, the Court will credit some time for the minimum wage claim. However, as Plaintiff still emphasized the overtime claim in the Report of Parties' Planning Meeting filed a mere 5 days earlier, the Court will not evenly split the time. | 0.60 |

| | | | Out of the requested 1.80 hours, the Court will credit 0.60 hours for the minimum wage claim. | |
|---|---|---|---|---|
| Allen Arnold | 1/12/15 Review of I.D. – damages chart for client meeting on Friday | 0.30 | The time sheet indicates an original time of 0.90. Plaintiff's counsel self-reduced the time to 0.30. The Court will approve the reduced time. | 0.30 |
| | | | **Total Hours Approved** | **1.0** |

The Court finds that counsel was generally unable to carry the burden of showing that the bills submitted related exclusively to the minimum wage claim. Rather, the evidence preponderates that the billing was for combined claims or even for the overtime claim. Therefore, based on the above reductions and the approved time, the new approved amount of time utilized in the Lodestar Amount is as follows:

| Attorney | Years Experience | Hours | Rate | Total |
|---|---|---|---|---|
| David Arendall | 42 | 1.7 | $400.00 | $680.00 |
| Allen Arnold | 13 | 1.0 | $285.00 | $285.00 |
| **Total** | | | | **$965.00** |

**(c)    Adjustment to Lodestar Amount**

As previously discussed, computation of the lodestar amount does not necessarily terminate the fee analysis and the Court must consider the necessity of an adjustment for results obtained using the *Johnson* factors. After a careful review, the Court finds no further reduction or enhancement is necessary.

**IV.    COSTS AND EXPENSES**

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs…should be allowed to the prevailing party." However, "[f]ee applicants bear the burden of providing sufficient detail in their records to

explain and support their requests for fees and costs." *Lee v. Krystal Co.*, 918 F.Supp.2d 1261, 1275 (S.D. Ala. 2013) (quoting *Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 645 (D. Md. 2012)). "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). To determine which expenses may properly be included, the court must look to "the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id.* When reviewing costs and expenses, "the standard for reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987). That said, "fee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs." *Lee*, 918 F.Supp.2d at 1275 (quoting *Andrade v. Aerotek, Inc.*, 852 F. Supp.2d 637, 645 (D. Md. 2012)).

A.    **Plaintiff's Current Counsel**

Plaintiff's counsel seeks an award of costs and expenses in the amount of $1,457.68 which are broken down as follows: "LETTER," Copies, Tabs, Blowbacks, "Causey Peterson Reporting, Inc. Depo – Vol. 2 (Karla Morrison)," and postage expenses. *See* Doc. 114 as revised by Doc. 122.

First, as with attorney's fees, costs incurred after the July 28, 2017 are not recoverable. Specifically, the Offer of Judgment provides "the judgment shall provide for an award of costs (as defined by 28 U.S.C. § 1920) that have accrued to the date of this offer, and on the condition that Plaintiff must prove such costs in the manner provided by law." *See* Doc. 121, Ex. A at ¶ 3. There are ten line items dated after July 28, 2017 which total $63.90. These lines are excluded.

Next, though normally a deposition may be recoverable, the one submitted on the expenses list is from 8/12/16 described as "Causey Peterson Reporting, Inc. Depo – Vol. 2 (Karla Morrison)." That deposition was provided as an attachment to the motion for summary judgment. *See* Doc. 69, Exhibit 14. A review of the 118-page deposition shows that none of Volume 2 relates to the minimum wage claim. As such, the $432.40 submission is excluded.

Further, as discussed with regard to attorneys' fees, correspondence is clear that as of April 4, 2017, Defense counsel put Plaintiff on notice that an offer of settlement for the full amount of Plaintiff's minimum wage claim would be tendered and that he needed an accurate accounting on the exact amount sought including principal and liquidated damages. *See* Doc. 118, Exhibit at p. 75-80. The Court need not repeat the rationale previously discussed, but the Court does not find it appropriate to impose those costs on the Defendant when the Plaintiff was the basis for the delay. As such, the Court excludes entries after April 5, 2017 – which would be the twelve line entries in July 2017 for a total of $79.15.

It appears that even after the revised costs were submitted, a postage expense for $2.03 was still listed in the revised amount. Postal expenses are not an authorized expense under 28 U.S.C. § 1920 as Plaintiff previously acknowledged. The Court takes this to be an inadvertent submission and therefore removes the expense.

Based on the above, after removing the lines that clearly and easily merited deduction, the new baseline total is $880.20. The Court turns to the remaining lines from June 28, 2016 to March 23, 2017. The 98 remaining entries are for copies, letters, and blowback. The Court finds the lack of description makes it almost impossible for the Court to determine whether they relate to the minimum wage claim or the overtime claim.

On August 31, 2016, the Defendant filed its motion for sanctions and on September 16,

2016, the Plaintiff filed her response in opposition. The hearing on the motion for sanctions occurred on September 22, 2016. Given the context of those weeks and the fact the Court suspended other briefing deadlines, the Court finds it more likely than not that the expenses between those dates relate primarily to the motion for sanctions and therefore excludes those 39-line item submissions. Those entries reach a total of $349.50 that is excluded.

Out of the 98, twelve relate to 2017 entries post the Court's sanction opinion. As such, those are far more likely to be related to the minimum wage claim because the Plaintiff was then on notice about the mandatory inference on the time cards for the overtime claim. While the Court cannot entirely evaluate the submitted costs, none of them on their face appear to be unreasonable. As such, the Court will approve those costs for a total of $45.23.

Next, there is a listing on July 25, 2016 for "Blowbacks" in the amount of $18.30. The Court generally understands that "blowback" is a reference to the practice of printing electronic documents to paper. The Court cannot determine why that would be necessary in this case and without further description, cannot approve this expense and deducts it.

This leaves a total of $467.17 which the Court cannot reasonably evaluate whether they are applicable to the overtime or the minimum wage claim. Ultimately, the burden rests upon the person requesting costs which they have failed to carry. Rather than simply denying the entire amount, the Court will consider the "importance" the Plaintiff placed on the minimum wage claim prior to the sanctions opinion. As such, out of the $467.17, the Court will approve $155.72 for expenses relating to the minimum wage claim. This is 1/3 of the remaining expenses which the Court finds reasonable to apply to the minimum wage claim.

Based on the above, the Court finds that expenses in the amount of $200.95 are appropriate which combines the two approved amounts above. The remaining expenses are

denied.

**B.     Plaintiff's Former Counsel**

Plaintiff's former counsel seeks $433.41 for Costs.  *See* Doc. 115, Exhibit 6; Doc. 116.

Specifically, the amount includes $400.00 filing fee and $33.41 for service of summons and

subpoena.   Though the Court could divide the amount between the two claims, instead it

recognizes that even if *only* the minimum wage claims had been filed, these expenses would

have remained the same.  As such, the Court finds it appropriate to award the $433.41 requested.

**C.     Plaintiff**

Plaintiff seeks direct reimbursement for $2,741.48 in deposition transcript expenses.  *See*

Doc. 114, Exhibit 1-C.  However, as previously noted (repeatedly) and by the very terms of the

Offer of Judgment, this Court can only authorize expenses that relate specifically to the

prevailing claim – Count I Minimum Wage.   Thus, it is clear Plaintiff cannot seek *full*

reimbursement for deposition costs for the transcripts of Charles and Nancy Veale nor her own

full deposition transcript.  She seeks $1,017.20 for the two Veale depositions and $1,724.28 for

her own deposition.  While not the Court's responsibility to review the depositions again for the

purposes of this motion, the Court is ready to conclude this matter and did its own due diligence

in  thoroughly  reviewing  the  submission.    However,  it  is  ultimately  Plaintiff's  burden  to

substantiate her claim – which she failed to do.

Nancy Veale's deposition transcript was 74 pages including the word index at the end.

*See* Doc. 69, Exhibit 4.  Out of those pages, it would appear only pages 10-13 related to the

minimum wage claim – a total of four pages.  *Id*.  Dr. Charles Veale's deposition transcript was

84 pages including the word index.  Out of those pages, it would appear only pages 22-29 and

47-48 related to the minimum wage claim – a total of ten pages.  As such, out of 158 pages total

between the two depositions, only 14 pages related to the minimum wage claim which is just shy of 9% of the total pages. Therefore, the Court will award costs as to 9% of the total $1,017.20 submitted for those two depositions which is $91.50.

With regard to her own deposition, the total number of pages is 287 including 30 pages for a word index. *See* Doc. 69, Exhibit 5. Out of those pages, it would appear only pages 43-53, 136, 142-143, 157, and 224-226 related to the minimum wage claim – a total of eighteen pages. *Id.*[12] As such, the amount is approximately 6.27% of the total. Therefore, out of the $1,724.28, only $108.12 is recoverable.

Based on the above, Plaintiff may recover $199.62 for her direct costs.

### V. CONCLUSION

Based on the analysis contained in this Memorandum Opinion, it is ORDERED as follows:

(1) The Joint Motion for Approval of Plaintiff's Acceptance of Defendant's Offer of Judgment (Doc. 121) is GRANTED.

(2) The settlement (in the form of a Rule 68 offer and acceptance of judgment) is APPROVED as a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Plaintiff is due $10,000.00 which encompasses minimum wages and liquidated damages.

(3) Defendant's Motion for Attorney's Fees (Doc. 93) is GRANTED in part and DENIED in part as follows: Defense counsel is due to be paid the sum of $16,380.00 as reasonable attorney's fees relating to the sanctions motion. The remaining request is not approved.

---

[12] Pages 77 – 80 were redacted and the Court could not review. However, given the context of the pages before and after, it seems unlikely that the minimum wage claim would have been addressed.

(4) Plaintiff's Petition for Attorneys' Fees, Expenses and Costs (Doc. 114) as modified by the revisions (Docs. 120, 122) is GRANTED in part and DENIED in part as follows: Plaintiff's counsel is due to be paid the sum of $15,075.00 as reasonable attorney's fees relating solely to the minimum wage claim. Plaintiff's counsel is due to be paid $200.95 for costs as related solely to the minimum wage claim. Plaintiff is due reimbursement for $199.62 for the deposition transcripts. The remaining requests are denied.

(5) Defendant's Motion Plaintiff's Former Counsel's Petition for Fees and Costs (Doc. 119) is DENIED as to the motion to strike. Rather it is considered a response in opposition.

(6) The Petition for Attorneys' Fees (Doc. 115) is GRANTED in part and DENIED in part as follows: Plaintiff's former counsel is due to be paid the sum of $965.00 as reasonable attorney's fees relating solely to the minimum wage claim. The remaining request is denied.

(7) The Bill of Costs submitted by Plaintiff's Former Counsel is GRANTED. Plaintiff's former counsel is due to be paid $433.41 for costs.

Accordingly, it is ORDERED that this matter is DISMISSED WITH PREJUDICE per the Rule 68 Offer and Acceptance of Judgment. A separate Final Judgment shall issue contemporaneously with this Memorandum Opinion and Order.

DONE this 14th day of December, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE